UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                  )
CATHERINE FIORELLO AZIZ           )
                                  )
              Plaintiff,          )
                                  )
v.                                )      CIVIL ACTION
                                  )      NO. 19-11885-WGY
                                  )
ANDREW SAUL,                      )
Commissioner of the Social        )
Security Administration,          )
                                  )
              Defendant.          )
_____ )
```

Young, D.J.                                    February 25, 2021

**MEMORANDUM & ORDER**

## I.    Introduction

Plaintiff Catherine Fiorello Aziz ("Aziz") moves to reverse or remand the decision of the Commissioner of the Social Security Administration (the "Commissioner" or "SSA") denying her disability income benefits under Title II of the Social Security Act ("SSI" or "SSI benefits"). The Commissioner cross-moves to affirm the decision.

The hearing officer's decision is reversed and remanded for rehearing because he failed properly to develop the record as to a missed psychological consultative examination that the SSA had deemed necessary at the reconsideration stage, and improperly considered Aziz's failure to seek mental health treatment to

cope and lack of recorded hospitalizations without addressing the reasons therefor.  This Court ALLOWS Aziz's motion and DENIES the Commissioner's cross-motion for affirmance, solely on those grounds.

### A.   Procedural History

On April 6, 2016, Aziz filed a Title II application for a period of disability beginning on December 31, 2008. Certification, Attach. 2, Docs. Related Admin. Process Including Tr. Oral Hr'g ("R.") at 11, ECF No. 14-2.  Aziz's initial claim was for disability due to methicillin-resistant staphylococcus aureus ("MRSA"), anxiety, fibromyalgia, acute cystic acne, iron deficiency, gastroesophageal reflux disease ("GERD"), ringing in ear, herniated disc, depression, post-traumatic stress disorder ("PTSD"), and attention deficit hyperactivity disorder ("ADHD"). Id. at 94-95.  The claim was denied on June 1, 2016 because Aziz had not provided sufficient information to support the claim. Id. at 99.  Aziz requested reconsideration, and the decision was affirmed on March 13, 2017.  Id. at 11, 114.  Again, the claim was denied because of insufficient evidence in the file to support her claim.  Id. at 135.  Aziz applied for a hearing on June 12, 2017.  Id. at 11.  A one-hour hearing was held on March 7, 2019.  Id. at 11, 34-93.  The hearing officer issued a decision on April 5, 2019 ("the Decision"), finding and ruling that Aziz was not disabled.  Id. at 11-21.  On May 1, 2019, Aziz

2

appealed the Decision to the Appeals Council, Office of Disability Adjudication and Review.  Id. at 352-353.  On July 8, 2019, the Appeals Council denied review of the Decision.  Id. at 1-4.

On September 5, 2019, Aziz filed the complaint in this action challenging the Commissioner's denial of her Social Security disability benefits claim.  Compl. ¶¶ 1-16, ECF No. 1. On February 3, 2020, Aziz filed a motion to reverse or remand. Mot. Reverse Remand Decision Commissioner Social Security Administration, ECF No. 18; Mem. Law Supp. Pl.'s Mot. Reverse Remand Decision Commissioner Social Security Administration ("Pl.'s Mem."), ECF No. 19.  The Commissioner filed a cross-motion to affirm the decision and a supporting memorandum on March 16, 2020.  Mot. Order Affirm Decision Commissioner, ECF No. 21; Mem. Support Mot. Order Affirm Decision Commissioner ("Def.'s Mem."), ECF No. 22.

The parties' counsel came before this Court on December 16, 2020 for a hearing by video conference, at the conclusion of which this Court took the matter under advisement.  See Elec. Clerk's Notes, ECF No. 24.

### B.  Background

#### 1.  Work History

Aziz's alleged onset of her physical and mental impairments was December 31, 2008, which was amended at the hearing to

December 17, 2012.  R. at 41, 237.  At the amended date of
onset, Aziz was 46 years old.  Id. at 169.  Aziz was 50 years
old on December 31, 2016, the date of last insured ("DLI"), and
53 years old on the date of her hearing.  Id. at 11-12, 169.
Aziz is a high-school graduate with some college coursework, but
Aziz did not earn a college degree.  Id. at 39.  The record
reflects a verified work history in the field of computers and
sales from at least 2003 through 2012, with some further
attempts at work in that field in 2014, and seasonal work in
retail in 2018.  Id. at 83-84, 222-225.

### 2.   Medical History and SSA Case Progression

#### a. Pre-Claim Filing

Aziz has a longitudinal medical record of treatment for
physical conditions and at least medication for mental health
conditions.  Id. at 391-478.  Pertinent to the issues here,
between the amended date of onset through the DLI, the medical
record reveals that her primary care physician, Jane Thompson,
M.D., through various medical personnel oversaw Aziz's care at
her office during the pre-DLI period.  Id. at 392-447.  During
this same period, Aziz also saw Beverly Anderson, RN, at a
different healthcare provider, for psychological medications.
Id. at 367-382.  Beginning in January 2016, however, Aziz's
problems took a turn for the worse.  On January 21, 2016, Aziz
had her annual physical with JoAnn Furlong, NP, her first

physical examination since 2012.  Id. at 404.  Furlong reported
that Aziz claimed to be "miserable," "hurt[ing] all over," and
suffering from "achy" "hands[,] wrists[,] arms[,] and legs" for
the past "couple months."  Id.  She complained of chest pain
"every day like a brick is on her chest," and remarked that her
"neck to lower back hurts [and] entire back is sore [due to]
mult[iple] joint pains."  Id. at 407.  In summary, fibromyalgia
was suspected, and anxiety, depression, cystic acne, GERD, and
hearing loss were listed as problems.  Id. at 410-411.

### b. Aziz Files her SSDI Disability Claim

On April 6, 2016, Aziz filed a pro se claim for disability
due to MRSA, anxiety, fibromyalgia, acute cystic acne, iron
deficiency, GERD, ringing in right ear, herniated disc,
depression, PTSD, and ADHD.  Id. at 94.  Aziz initially claimed
a date of onset of December 31, 2008.  Id. at 95.

A week later, on April 13, 2016, Aziz had a follow-up visit
with Nurse Practitioner Furlong for depression/anxiety, GERD,
and joint pain.  Id. at 397.  Although she was still seeing
Nurse Anderson for psychological medication, Aziz indicated that
she wanted "to find a therapist" and "want[ed] 'the best'
therapist there is to treat her."  Id. at 397, 400.  Aziz
reported that she was "in financial straits" and "applying for
Social Security."  Id. at 397.  She claimed that she had stopped
taking her medication for fibromyalgia because it had not

helped, though she continued to "hurt[] all over."  Id.  Aziz
"move[d] easily on and off [the] exam table."  Id. at 400.  At
this visit she was diagnosed with iron deficiency, GERD,
multiple joint pain ("seems [to] have fibromyalgia"), and
anxiety/depression.  Id. at 401-402.  Nurse Furlong states,
"seeing her med prescriber soon but needs therapy lots of social
issues d [sic] care called to help her fin[d] one."  Id. at 402.

On May 5, 2016, the SSA sent a second request to Aziz for
completion of her function report.  Id. at 96.  On May 9, 2016,
Aziz's PCP's office provided records.  Id. at 95-96.  On May 24,
2016, under the subject line "FTC," likely meaning failure to
cooperate, there is a notation that Aziz called and was reminded
that "without the forms the claim could not be developed."  Id.
at 96.  Aziz was "made aware of [the May 31, 2016] deadline[]
consequences and declined to have third party contacted."  Id.

On a document dated May 25, 2016, although it is not clear
when received by SSA, Aziz wrote a note claiming to have
requested that Nurse Anderson expedite her records.  Id. at 254.
According to Aziz's self-report, she was "overwhelmed," reported
problems getting along with others including family, and did not
engage in social activity.  Id. at 253-258.  Aziz wrote that she
"need[ed] help ASAP of supplemental income, housing, to move
etc. and can't get help." Id. at 260.

### c. Aziz's Initial Claim Denied and Request for Reconsideration

On June 1, 2016, the SSA denied Aziz's pro se claim for
lack of documentation:

> Under the law, the applicant is responsible for
> furnishing evidence to support the claim. Although
> you have been requested to furnish additional
> evidence, you have not done so. Therefore, a
> determination has been made based on the evidence
> in file. This evidence does not show that you
> are disabled.

Id. at 99.

On September 7, 2016, without the benefit of counsel, Aziz
requested reconsideration of the denial of her claim. Id. at
261-274. On appeal of her initial denial, Aziz reported:

> Worsening [since January 2016] already extreme
> anxiety, depression, irritability, focus, lost
> sense of self worth/value, ex-husband
> physically/financially abandonment and my family
> abandoned me, agoraphobic, added stress from costly
> unexpected vehicle repairs and no car for 2 months,
> no job, forced out of home by eviction. Physically
> exhausted, fibromyalgia is worsening numbing of
> hands/ feet, body aches, now restless leg syndrome,
> insomnia. Increased night terrors from marital
> emotional abuse. Because I hadn't had a car for
> few months and no family or friends nearby it was
> impossible to get to doctors appointments, do
> errands, groceries, etc. Need to get to ENT
> specialist due to ears ringing. Cystic disease has
> spread throughout my body and causes painful boils,
> keeps me from going out in public due to humiliation
> of open sores, etc. I'm in despair and feel my
> feet are stuck in, extreme ocd about past failures,
> post divorce, abuse, family abandonment and stuck
> in never ending daily tasks, to-dos, etc.

Id. at 262. She also claimed new conditions:

> Emotional symptoms have spiraled and thoughts of suicide. Living circumstances with eviction and moving have taken a toll on early signs bulging discs and cannot sit, stand or do much. Irritability, mood swings, crying spells, etc. My emotional state and body ailments all around feel worse and feels there no quality of life. I was referred to a crisis center by Beverly Anderson, psychiatric RN.

Id. Aziz reported further deterioration in her daily activities:

> worsening aches and pain from fibromyalgia, insomnia, lack of interest to shower, dont leave home, don't go out, can't remember what interests me since i've been homebound for 3 years, lost friendships due to medical circumstances and closest friend recently committed suicide.

Id. at 270. A further self-report function on October 6, 2016 revealed Aziz living in an apartment with her adult daughter. Id. at 298-299. She described sedentary activity at her home, essentially trying to gain control of her life. Id. She claimed that she could no longer work or exercise daily, or enjoy socializing or any other activities. Id. at 299. She reported not changing out of her pajamas during the day, and no interest in bathing unless going to the doctor. Id.

On October 27, 2016, Aziz had a follow-up visit with Nurse Practitioner Furlong with regard to her anemia. Id. at 392. Aziz told Nurse Practitioner Furlong that she "does not see therapist – misses her [appointments]." Id. She reported being

exhausted all the time, applying for disability, and applying for a job in software.  Id.

### d. SSA Reconsideration, Dr. Benanti's Review, Dr. Saxena's Consultative Examination, and Denial of Reconsideration

At the reconsideration level, Dr. John Benanti was tasked with reviewing the initial denial of the claim.  Id. at 108.  On December 29, 2016, Dr. Benanti determined that a consultative examination ("CE") was necessary for Aziz's impairments.  Id. ("[Aziz] has submitted essentially no MERs.  I have requested CE today.  No imaging studies needed.  Please return info to me once obtained.").  As reason, Dr. Benanti wrote, "The evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim."  Id.

Dr. Asha Saxena performed the physical CE and memorialized her examination on January 11, 2017, some 11 days after the DLI in this action.  Id. at 362-366.  Dr. Benanti reviewed the records, including Dr. Saxena's report, and assessed that the record supported a severe medically determinable impairment of fibromyalgia.  Id. at 110.  Nevertheless, Dr. Benanti determined that while fibromyalgia might be expected to produce pain, Aziz's statements about her symptoms were "[p]artially [c]onsistent" considering the record before him, and that the "[s]everity of [Aziz's] allegations and Function Report appear to be out of proportion to objective clinical assessments.

Psychological disabilities may be contributing to reported

clinical limitations." Id. (emphasis added).

A psychological CE was also ordered; the record reflects that

on March 7, 2017, the SSA had a telephone conversation with Aziz

confirming her appointment for a psychological CE. Id. at 107-

108. Julie Cohen, PhD., attempted to conduct the scheduled

psychological CE of Aziz on March 13, 2017, but Aziz missed the

appointment. Id. at 109. Aziz left two messages that same day.

Id. at 108. When Cohen contacted Aziz, Aziz was "verbally

inappropriate" on the telephone and hung up on Cohen. Id. at 109-

110. In the record is a note of the conversation:

> CLMT CALLED IN AND LEFT TWO MESSAGES, ONE SAID THAT
> SHE HAS BACK PAIN, SHE SAID THIS WHOLE PROCESS IS
> RIDICULOUS THAT WE ARE DRAGGING HER THROUGH.
> CALLED CLMT BACK, SPOKE WITH HER SHE WAS AGRESSIVE
> ON THE PHONE, SHE WAS SWEARING HER HEAD OFF AT ME
> AND STATING HOW BAD THIS SYSTEM IS. CLMT WAS USING
> VERBAL ASSAULTIVE WORDS AND WAS INCESSANTLY
> SWEARING. I TOLD HER MORE THAN ONCE TO PLESAE NOT
> USE THE LANGUAGE THAT IT WAS INAPPROPRIATE AND SHE
> DID NOT LISTEN. SHE WAS SCREAMING ON THE PHONE
> STATING THAT EVERYONE IS AGAINST HER AND THAT SHE
> DOESNT NEED TO BE EVALUATED. I KEPT ASKING HER IF
> I RE-SCHEDULE THIS IF SHE WILL GO, AND SHE JUST
> KEPT YELLING AT ME AND SWEARING. CLMT HUNG UP THE
> PHONE.

Id. at 108 (capitalization in original).[1] Dr. Cohen's assessment

was "no mental medically determinable impairments established"

---

[1] Aziz later claimed that she missed her appointment because
of a slip and fall injury. Id. at 140. Aziz claims that the
psychological CE was to be rescheduled and that the SSA did not
call her back to reschedule. Id. On March 6, 2017, Aziz had an

because although there was evidence of then-current mental health treatment, there was no "AMS," likely meaning "accepted medical source," and no "TS," likely meaning "treating statement," and Aziz failed to attend her CE examination and "was uncooperative on the phone and hung up on the examiner on 3/13/17 when called about the CE."  Id. at 110.  Aziz's request for reconsideration was denied that same day, on March 13, 2017.  Id. at 135.

The SSA based its denial decision solely on the records available at the time, including Dr. Saxena's CE report, and because Aziz failed to attend the CE examination with Dr. Cohen. Id.  According to the denial, the SSA determined that the psychological CE was "needed to fully evaluate [Aziz's] condition."  Id.

On June 12, 2017, Aziz, again without counsel, requested a hearing before a hearing officer, stating that she missed the psychological CE examination because of an injury:

> I REQUEST A HEARING BEFORE AN ADMINISTRATIVE LAW
> JUDGE.  I DISAGREE WITH THE DETERMINATION MADE ON
> MY CLAIM FOR DISABILITY-WORKER OR CHILD BENEFITS

---

annual physical and X-rays taken purportedly for an accident where she fell down ten concrete stairs and was injured.  Id. at 499-501, 598.  The accident may have occurred on March 4, 2017, id. at 138, although she also claims that it occurred on March 13, 2017 and March 8, 2017, id. at 140, 143.  There is also evidence that she fell on February 13, 2017.  Id. at 598.  She also mentions a slip and fall in March 2017 in her appeal.  Id. at 303.  Nothing in the record indicates that the hearing officer or any of Aziz's counsel during the administrative process have ever considered the missing psychological CE.

> <u>BECAUSE MISSED SCHEDULE PSYCHOLOGIST EVAL 3/4/17
> DUE TO SLIP & FALL INJURY 3/8/17, ACUTE BACK/
> EXTREMITY PAIN, MUSCLE SPASMS, LIMITED RANGE MOTION
> NECK, ANXIETY, OCD, DEPRESSION, AGORAPHOBIA.</u>

<u>Id.</u> at 138 (capitalization in original) (emphasis added).  On

June 13, 2017, Aziz requested permission to appeal late.  <u>Id.</u> at

140-141.

On June 16, 2017, Aziz had a follow-up visit with Dr.

Thompson.  <u>Id.</u> at 590.  At that visit, Aziz claimed that she could

not find a therapist, but Dr. Thompson states in her notes, "that

really isn't true.  [Aziz] was seeing [Nurse Anderson] . . . and

stopped going 3 weeks ago.  She has no car now so could not get to

[appointments].  Has a list of therapists and psychiatric

prescribers now from our social workers but has not explored it."

<u>Id.</u>  Dr. Thompson also noted that Aziz "[m]oves stiffly on and off

exam table" and has some limited flexibility in her thumb.  <u>Id.</u> at

594.  As for anxiety and depression, Dr. Thompson wrote, "[Aziz]

was told again to contact the people on the list the social worker

gave her.  She is adamant she 'does not want a social worker.'"

<u>Id.</u> at 595.  Dr. Thompson indicated that although she had

appointments with psychology and psychiatry, Aziz had a "[b]arrier

difficulty accepting help."  <u>Id.</u> at 596.  Dr. Thompson instructed

Aziz "to call the names on the list of behavioral health providers

and see where you can go for therapy and meds."  <u>Id.</u> at 597.

### e. Aziz's First Counsel Appears, Aziz Continues Treatment from July 2017 Through January 2018, and Aziz's First Counsel Withdraws

On July 10, 2017, Ronald Eskin, Esquire, appeared on behalf of Aziz.  Id. at 147.  From July 2017 through August 2018, the record reflects that Aziz sought further treatment for her conditions with Nurse Practitioner Larson.  Id. at 584.  At that point, she was no longer seeing Nurse Anderson and had not followed up with behavioral health since May 2017.  Id.  She complained of back pain, joint pain, muscle aches, and stiffness.  Id. at 586.  Nurse Practitioner Larson observed "[n]ormal apparent [range of motion] of joints and extremities with ordinary activity and moving around exam room.  She crouches, bends, squats at times without apparent pain or difficulty.  Normal gait." Id. at 587.  Notably, Nurse Practitioner Larson wrote, "[Aziz] has significant mental health issues that are not currently being managed by a psychiatrist or therapist.  I will have our [Behavioral Health] program try to reconnect with her to establish care with new therapist and psychiatrist ASAP." Id. at 588.  On January 12, 2018, Mr. Eskin withdrew his representation.  Id. at 163.  The record is silent as to the reason for his withdrawal.

### f. Aziz's Condition Further Deteriorates

On June 19, 2018, Aziz was late for a scheduled physical exam.  Id. at 578.  Leah Petrosino, NP, nonetheless agreed to see her for an acute visit.  Id.  Nurse Practitioner Petrosino observed that Aziz was "very scattered in her thought process," claimed that "she [could not] get an appointment with a therapist for psych med prescribed," and that she was "very difficult to follow throughout the visit."  Id.

### g. Aziz's Second Counsel Appears

On August 8, 2018, eight months after Mr. Eskin's withdrawal, Aziz's second counsel, Michael James Kelley, Esquire, filed his appearance on Aziz's behalf.  Id. at 166-169.

### h. Dr. Thompson Provides Treating Source Statement, Mental and Physical Functioning Statement

On September 5, 2018, Dr. Thompson, then Aziz's former primary care physician, prepared a Treating Source Statement. Id. at 508.  This letter stated that "[b]ased upon her last visits," Dr. Thompson "consider[s] . . . [Aziz] to be seriously disabled from being able to work at gainful employment based upon her apparent psychiatric function."  Id.  Dr. Thompson mentioned concerns that the Mental Residual Functional Capacity Form might not capture the full extent of her disability and wrote, "I consider her to be 100% disabled based upon my

14

observation of her coping with staff here.  I suspect a psychiatrist could give a more weighty opinion on this." Id. (emphasis added).  Indeed, it appears that Dr. Thompson was more concerned about Aziz's mental state than her physical limitations.  Id.

Attached or prepared apparently simultaneously with the letter, Dr. Thompson filled out a Mental Residual Functional Capacity Form.  Id. at 509-510.  Check boxes were marked Category IV ("[p]recludes performance for 15% or more of an 8 hour work day") for all items except Section II(a) ("[c]arry out very short and simple instructions), id. at 509, and Section III(13) ("[a]sk simple questions to request assistance"), which were Category II ("[p]recludes performance for 5% of an 8 hour work day").  Id. at 510.  This is the only mental RFC in the record by a medical expert.

As for physical capacities (as of apparently 2018), Dr. Thompson filled in a worksheet indicating that Aziz could frequently lift up to 5 pounds and occasionally 11-20 pounds. Id. at 512.  She identified that Aziz could perform simple grasping and fine manipulation, but not pushing and pulling of arm controls.  Id.  She responded "N/A," or not answerable, to questions relating to stooping, crawling, climbing, and reaching, and standing, sitting, and walking.  Id.  She identified "total" restrictions on unprotected heights, moving

machinery, marked changes in temperature and humidity, and exposure to dust, fumes, and gases.  Id.  She indicated a "current diagnosis" (as of September 2018) of "anxiety, depression, fibromyalgia," that is exacerbated by a psychological condition.  Id. at 513.  Dr. Thompson indicated that, as of 2018, Aziz experienced "all bad days."  Id.  She reiterated that Aziz would be required to miss at least three workdays per month and is disabled from competitive substantial gainful employment.  Id.

In 2018, Aziz's financial, social, physical, and mental complaints generally increased.  Id. at 654-794.  There is evidence, however, that her new primary care physician provided conflicting physical limitation observations.  Id. at 693-94.

### i. Aziz's Second Counsel Withdraws on October 16, 2018 and Renews His Appearance on November 28, 2018.

On October 16, 2018, Mr. Kelley withdrew his representation of Aziz without explanation.  Id. at 170.  On November 28, 2018, Mr. Kelley entered a renewed appearance.  Id. at 195-196, 339. On March 7, 2019, Mr. Kelley withdrew again, id. at 209, and Graham Wright, Esquire, apparently affiliated with Mr. Kelley's office, filed an appearance, id. at 352-353.

### C.   The March 7, 2019 Hearing and April 5, 2019 Decision

At the March 7, 2019 hearing, Aziz (represented by her third attorney, and not current counsel) and vocational expert

("VE") Dianne Durr attended a hearing before the hearing officer. Id. at 33-92. Aziz's counsel had few questions, and the hearing officer took the matter under advisement. Id. at 35-92. Neither the hearing officer nor counsel raised the issue of the missed psychological CE appointment.

In the Decision, the hearing officer found the following severe impairments: "fibromyalgia, depression, anxiety, bipolar/depression, post-traumatic stress disorder (ptsd) and attention deficit hyperactive disorder." Id. at 14. The hearing officer also found that Aziz has "a history of iron deficiency anemia, ecchymosis, methicillin-resistant staphylococcus aureus (MERSA), cystic acne, gastroesophageal reflux disease, herniated cervical disc, asthma and tinnitus." Id. Nevertheless, Aziz's "record . . . evidences no significant functional limitations directly associated with these conditions," and the hearing officer therefore found these "conditions non-severe." Id. Breaking this down into physical and mental impairments, the hearing officer found:

> I considering [sic] listing 11.14,[2] but the evidence, detailed below, shows no record of an inability to ambulate effective [sic], no evidence of an inability to

---

[2] "Listings" are Social Security standards of diagnoses followed by elements which establish that the diagnosis is sufficiently severe to entitle the claimant to a presumption of disability. 20 C.F.R. § 404.1525. Here, Listing 11.14 is Peripheral Neuropathy, the only physical disorder. Id. Pt. 404, Subpt. P, App. 1.

perform gross or fine motor movements with each upper
extremity and no evidence of marked social limitations.
Since the claimant shows no evidence of an impairment
which meets or equals the criteria of a listed impairment
or of a combination of impairments equivalent in
severity (not in mere numbers) to a listed impairment,
disability cannot be established on the medical facts
alone (20 CFR 404.1520(d) and 416.920(d)).

Id.

As for mental impairments, the hearing officer found that
they did not meet or medically equal the criteria of Listings
12.02, 12.04, 12.06, or 12.15.[3]  Id.  The hearing officer
considered whether "paragraph B" criteria were satisfied -- that
is, whether Aziz's mental impairments result in at least one
extreme or two marked limitations in a broad area of
functioning: (1) understanding, remembering, or applying
information; (2) interacting with others; (3) concentrating,
persisting, or maintaining pace; or (4) adapting or managing
themselves.[4]  As to item 1, the hearing officer found only

_____

[3] Listing 12.02 (neurocognitive disorders), 12.04
(depressive, bipolar, and related disorders), 12.06 (anxiety and
obsessive-compulsive disorders), and 12.15 (trauma and stressor-
related disorders).  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§
12.01, 12.04, and 12.15.

[4] See 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00E.  In
each of these factors, the hearing officer was required to
assess the limitations on a five point scale: no limitation
("You are able to function in this area independently,
appropriately, effectively, and on a sustained basis."), mild
limitation ("Your functioning in this area independently,
appropriately, effectively, and on a sustained basis is slightly
limited."), moderate limitation ("Your functioning in this area
independently, appropriately, effectively, and on a sustained

moderate limitations based upon the psychological record, the lack of cognitive testing, and her working after the date of onset. Id. As to item 2, the hearing officer found no more than moderate limitations because while Aziz "engaged in medication management for the alleged mental health issues, . . . the record shows no documented evidence of mental health therapy to cope with such symptoms." Id. at 15. (emphasis added). Furthermore, there was no indication of psychiatric intervention (i.e., hospitalizations) or intensive crisis care during the period. Id. Crisis intervention after the period, according to the hearing officer, "merely supports worsening of symptoms after the date of last insured." Id. Moreover, "numerous progress records reflected no issues or concern with behavior." Id. at 15. As to item 3, the hearing officer found moderate limitations in concentration. Id. On the one hand, he found that medical records revealed that Aziz's focus and concentration were good while on medication. Id. Further, there was an absence of "psychological or cognitive testing." Id. Nevertheless, the hearing officer gave Aziz the

---

basis is fair."), marked limitation ("Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited."), and extreme limitation ("You are not able to function in this area independently, appropriately, effectively, and on a sustained basis."). Id. §12.00F2.

"benefit of the doubt."  Id.  As to item 4 -- adapting and

managing oneself -- the hearing officer found a moderate

limitation "at best," considering "the history of treatment in

support of deficits in this area," but noted that Aziz lived

with her then-fourteen-year-old daughter on the date of onset in

2012, and Aziz testified that she has the "innate ability to be

resourceful."  Id.  Accordingly, without an extreme or two

marked limitations, the mental impairment did not qualify under

a "Paragraph B" analysis.  Id.  The hearing officer also

determined that the evidence failed to establish any "paragraph

C" criteria.[5]  Id.  Although the hearing officer noted a lack of

---

     [5] See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(G).
There is no explanation of the paragraph C analysis other than a
conclusory sentence that the evidence does not support a
Paragraph C finding.  Paragraph C criteria "are an alternative
to the paragraph B criteria" for the mental disorders listed
here.  Id. § 12.00(G)(1).  The SSA "find[s] a mental disorder to
be 'serious and persistent' when there is a medically documented
history of the existence of the mental disorder in the Listing
category over a period of at least 2 years, and evidence shows
that your disorder satisfies both C1 and C2."  Id.  Paragraph C1
includes reliance on ongoing mental health therapy, among other
things "to diminish the symptoms and signs" of the mental
disorder.  Id.  Notably, under C1, "[i]f the evidence indicates
that the inconsistent treatment or lack of compliance is a
feature of [a claimant's] mental disorder, and it has led to an
exacerbation of your symptoms and signs, we will not use it as
evidence to support a finding that [claimant has] not received
ongoing medical treatment as required by this paragraph."  Id. §
12.00(G)(2)(b).  "The criterion in C2 is satisfied when the
evidence shows that, despite [the claimant's] diminished
symptoms and signs, [the claimant has] achieved only marginal
adjustment."  Id. § 12.00(G)(2)(c).

evidence, he failed expressly to address the missed

psychological CE examination in this part of the decision.

With respect to the mental impairments, the hearing officer

determined that the evidence lacked support for the allegations.

Id. at 17-18.  Specifically, the hearing officer found that the

record from 2012 through 2016 indicated depression, anxiety,

attention deficit hyperactivity disorder, and obsessive-

compulsive disorder, but that, again, there was no indication of

functional impairment because of these issues.  Id.  Dr. Saxena

found it difficult to obtain a history because Aziz was crying,

but the hearing officer discounted this evidence because it went

"little toward mental function" and occurred after the DLI.  Id.

at 18.  The hearing officer also noted that there were no

indications of mental impairment with the new PCP, and no

indications of psychiatric crisis interventions, such as

hospitalizations (before the DLI).  Id.  The record also

demonstrated gainful activity during 2012, 2014, and 2018, and

"close to substantial gainful activity in 2012."  Id.

As to the medical opinion evidence, the hearing officer

gave significant weight to Dr. Benanti, the State Agency Medical

consultant, on physical impairments, and little weight to Dr.

Thompson, because Dr. Thompson's opinion was two years after her

last treatment and did not indicate the timing of the onset of

the impairments.  Id.  The hearing officer gave limited weight

to Dr. Saxena.  Id. at 18-19.  The hearing officer gave little
weight to Dr. Cohen's assessment (the missed psychological CE
examination).  Id.  Notably, the hearing officer did not address
why there was no evidence provided by the CE.

The hearing officer then relied upon the testimony of the
VE and determined that, as of the DLI, Aziz could make a
successful adjustment and work as a quality assurance checker,
office helper, or mail clerk.  Id. at 20.  In conclusion, the
hearing officer determined that Aziz was not disabled.  Id. at
21.

### D.   The Commissioner's Review

On May 1, 2019, Aziz appealed the Decision to the Appeals
Council, Office of Disability Adjudication and Review.  Id. at
352-353.  Aziz's contention was that the hearing officer focused
only on the pre-DLI record and failed to consider the post-DLI
medical record.  Id.  On July 8, 2019, the Appeals Council
denied review of the Decision.  Id. at 1-4.

## II.  ANALYSIS

The hearing officer's decision is not supported by
substantial evidence and must be remanded.  First, the hearing
officer did not develop the record and appeared to avoid the
elephant in the room: a missed psychological CE examination that
was the entire basis of Aziz's appeal.  Second, the hearing

officer relied upon the lack of treatment without appropriately considering and addressing the reasons Aziz did not seek treatment.  Because these two reasons require remand and infect the entire Decision, the Court does not rule upon the remaining arguments raised by Aziz.

### A.    Legal Standard

"The Commissioner's decision on disability is to be reviewed de novo to determine 'whether the final decision is supported by substantial evidence and whether the correct legal standard was used.'"  Silva v. Berryhill, 263 F. Supp. 3d 342, 345 (D. Mass. 2017) (quoting Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001)).  Courts reviewing the findings of the Commissioner evaluate those findings based on the substantial evidence standard.  Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient[t] evidence' to support the agency's factual determinations."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  In other words, substantial evidence need only be enough that a person of "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion."  Ortiz, 955 F.2d at

769 (quoting <u>Rodriguez</u> v. <u>Sec'y of Health & Hum. Servs.</u>, 647
F.2d 218, 222 (1st Cir. 1981)) (quotations omitted).

> **B.    The Hearing Officer Lacked Substantial Evidence for
> its Decision Because he Failed to Develop the Record
> in the Form of a CE Examination Deemed Necessary by
> the SSA at Reconsideration.**

Aziz, in a footnote, correctly observes that that "[t]here
was no mental RFC developed at either the initial or
reconsideration level."  Pl.'s Mem. 13 n.7.  She points out
further that the only mental health RFC was performed by Dr.
Thompson post-DLI, but that the hearing officer rejected Dr.
Thompson's mental RFC pronouncements and developed his own
mental RFC assessment without sufficient medical evidence to
support it, selectively relying on the non-accepted medical
source evidence of Nurse Practitioner Anderson's and Nurse
Practitioner Furlong's observations.  <u>Id.</u> 13-14 (citing R. at
367).  The Commissioner argues that this is entirely acceptable
because "the State agency psychological experts could not render
an opinion concerning Plaintiff's mental functioning because of
the lack of medical evidence" and therefore, "since there was no
medical opinion evidence related to [Aziz's] mental functioning
during the relevant period, [Dr. Thompson's] RFC is necessarily
the most limited, time-relevant assessment of her mental
functioning."  Def.'s Mem. 13.  While technically true, the

purported lack of medical evidence was the failure of the
Commissioner (and Aziz) to complete a mental CE examination at
reconsideration, not simply a medical record devoid of mental
health impairments.  Combining the record evidence with the
failure to address the sole contention on the appeal of the
reconsideration, that the ordered CE ought be completed because
Aziz was under a misimpression that it would be rescheduled, R.
at 138-143, requires reversal and remand of the Commissioner's
decision.

As the Supreme Court held more than twenty years ago in
Sims v. Apfel, "[t]he differences between courts and agencies
are nowhere more pronounced than in Social Security
proceedings."  530 U.S. 103, 110 (2000).  Indeed, it is an
"'investigatory model.'"  Id. (quoting Henry J. Friendly, "Some
Kind of Hearing", 123 U. Pa. L. Rev. 1267, 1290 (1975)).

To that end, "Social Security proceedings are inquisitorial
rather than adversarial" and "[i]t is the [hearing officer's]
duty to investigate the facts and develop the arguments both for
and against granting benefits."  Sims, 530 U.S. at 110-11;
Silva, 263 F. Supp. 3d at 346.  "While [Aziz] of course bears
the burden of proof on the issue of disability, . . . the
[Commissioner] nonetheless retains a certain obligation to
develop an adequate record from which a reasonable conclusion
can be drawn."  See Carrillo Marin v. Sec'y of Health & Hum.

25

Servs., 758 F.2d 14, 17 (1st Cir. 1985).  "The obligation to
fully and fairly develop the record exists if a claimant has
waived the right to retained counsel, and even if the claimant
is represented by counsel."  Bianco v. Astrue, No. C.A. 09-021S,
2010 WL 2382855, at *4 (D.R.I. Apr. 20, 2010) (citing 42 U.S.C.
§ 406); Evangelista v. Sec'y of Health & Hum. Servs., 826 F.2d
136, 142 (1st Cir. 1987) ("We have long recognized that social
security proceedings are not strictly adversarial. . . .
Accordingly, we have made few bones about our insistence that
the Secretary bear a responsibility for adequate development of
the record in these cases." (citation and quotations omitted)).
"This obligation does not impose a duty on [a hearing officer]
to act as the claimant's counsel.  It does, however, implicate a
duty to identify and address evidentiary gaps in the record
which, if left ignored, would result in prejudice to the
claimant."  Conway v. Berryhill, CIVIL ACTION No. 17-40062-DHH,
2018 WL 4815531, at *10 (D. Mass. Oct. 4, 2018) (Hennessy, M.J.)
(citing Torres-Pagán v. Berryhill, 899 F.3d 54, 59 (1st Cir.
2018) and Dalis v. Barnhart, CIVIL ACTION No. 02-10627-DPW, 2003
WL 21488526, at *6 (D. Mass. June 24, 2003) (Woodlock, J.)
(quotations omitted)).[6]

_____

[6] The Court emphasizes the non-adversarial function of the
disability evaluation process and recognizes that hearing
officers have historically been under tremendous pressure to
decide a staggering number of cases.  See Jonah B. Gelbach &

As the First Circuit teaches:

More than three decades ago we explained,

> In most instances, where appellant himself fails to establish a sufficient claim of disability, the [Commissioner] need proceed no further. Due to the non-adversarial nature of disability determination proceedings, however, the [Commissioner] has recognized that she has certain responsibilities with regard to the development of the evidence and we believe this responsibility increases in cases where the appellant is unrepresented, where the claim itself seems on its face to be substantial, where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the administrative law judge, without undue effort, to see that the gaps are somewhat filled as by ordering easily obtained further or more complete reports or requesting further assistance from a social worker or psychiatrist or key witness.

---

David Marcus, Rethinking Judicial Review of High Volume Agency Adjudication, 96 Tex. L. Rev. 1097, 1098-99 (2018) (acknowledging the crushing caseload hearing officers encounter). To be sure, the SSA, with special funding from Congress, has apparently taken steps to hire more hearing officers and decision writers, and the statistics reflect generally improving conditions. See Soc. Sec. Admin., Compassionate and Responsive Service (CARES) 2018-2019 Update, https://www.ssa.gov/appeals/ (last visited Feb. 22, 2021). Nevertheless, according to the SSA statistics, between April 26, 2019, and May 31, 2019, -- the month the Aziz Decision was issued -- the hearing officer issued 44 decisions, more than one per calendar day. Compare ALJ Disposition Data FY 2019 (For Reporting Purposes: 09/29/2018 through 05/31/2019), https://www.ssa.gov/appeals/DataSets/archive/03_FY2019/03_May_AL J_Disposition_Data.html (last visited Feb. 22, 2021) with ALJ Disposition Data FY 2019 (For Reporting Purposes: 09/29/2018 through 04/26/2019), https://www.ssa.gov/appeals/DataSets/archive/03_FY2019/03_April_ ALJ_Disposition_Data.html (last visited Feb. 22, 2021).

<u>Torres-Pagán</u>, 899 F.3d at 59 (reversing district court where
hearing officer failed to develop the record) (quoting <u>Currier</u>
v. <u>Sec'y of Health, Ed. & Welfare</u>, 612 F.2d 594, 598 (1st Cir.
1980)).  The First Circuit was clear:

> While claimants for Social Security benefits should have
> their cases thoroughly investigated by the SSA, it
> should surprise no one that additional diligence is
> often warranted when the claimant suffers from alleged
> mental disability. It is incumbent upon the Commissioner
> to ensure that the records upon which benefits decisions
> are made are fully developed and that individuals with
> psychological problems are not given short shrift.

<u>Id.</u> at 60.  While the claimant in <u>Torres-Pagán</u> was proceeding
<u>pro se</u>, the concept appears to be one of degree.

The recent case of <u>Gschwend</u> v. <u>Saul</u>, CASE NO. 18-CV-00166-
JTK, 2020 WL 5203991 (E.D. Ark. Sept. 1, 2020) (Kearney, J.), is
procedurally similar, although not identical, to this case.  It
is persuasive here.  In <u>Gschwend</u>, "[a]t both the initial and
reconsideration review stages, the agency doctors found [the
claimant] was not disabled while at the same time explaining
that there was 'insufficient evidence to rate due to [his]
failure to cooperate with the CE.' . . . [a]nd, as a result,
neither a RFC nor medical determinable impairments with
limitations were determined by the agency doctors."  <u>Id.</u> at *2.
At the hearing, counsel requested the hearing officer to re-
order the missed CE prior to reaching a decision.  <u>Id.</u>  The
hearing officer refused and found no disability.  <u>Id.</u>  On appeal

to the district court, Judge Kearney explicated what is the law here: that a hearing officer "has a duty to develop the record fully, even when the claimant is represented by counsel, and must order a consultative examination if it is necessary to make an informed decision." Id. That court also observed that the claimant had a good reason for missing the CE examination: his wife had been hospitalized the previous day and he was not aware that he could reschedule the CE. Id. at *3. Under those facts, "[d]espite the documented lack of medical evidence, the [hearing officer] erroneously filled in that evidentiary deficit with her own lay opinion . . . . In light of the lack of opinion evidence, the ALJ had a duty to order a consultative examination and created reversible error for failing to do so." Id. That court held that the decision was not supported by substantial evidence and reversed and remanded. Id.

In this district, Judge Zobel reversed and remanded for the hearing officer to consider the failure to participate in a further requested CE appointment dispositive. Swales v. Berryhill, 245 F. Supp. 3d 290, 296 (D. Mass. 2017) (Zobel, J.).

Another case, Clayborne v. Astrue, No. 06 C 6380, 2007 WL 6123191 (N.D. Ill. Nov. 9, 2007), instructs that once "the Social Security Administration deemed a consultative exam to be necessary in the first place, the Court finds that the ALJ was obligated to order a second consultative examination or, at a

29

minimum, explain why such an examination was no longer required [when the first CE was inconclusive]." Id. at *6.  There, the Court reversed and remanded:

> Because the [hearing officer] did not adequately develop the record by ordering a second consultative examination, we remand this case for proceedings consistent with this opinion.  On remand, the [hearing officer] should further develop the record to determine the extent and severity of the claimant's impairments. We express no view as to what the ultimate outcome should be on remand. We leave it open for the ALJ to take new evidence and reconsider all aspects of the case.  In light of our ruling, the Court expresses no view as to the other arguments [claimant] has raised.

Id. at *7.

Here, Aziz missed her psychological CE on March 13, 2017, and when contacted was "verbally inappropriate" on the telephone and hung up.  R. at 109-110.  Dr. Cohen's assessment was "no mental medically determinable impairments established" because although there was evidence of current mental health treatment, there was no accepted medical source, Aziz failed to attend her CE examination, and "was uncooperative on the phone and hung up [on] the examiner on 3/13/17 when called about the CE."  Id. at 110. As a result, Dr. Cohen noted "IE" or "insufficient evidence."  Id.

Aziz's reconsideration was denied the same day -- March 13, 2017.  Id. at 135.  While perhaps permissible, the swift closure of the window to evaluate Aziz's psychological disability appears to have been made in haste.  Indeed, there is evidence in the record that Aziz missed her appointment for good cause

and was under the impression that her CE was to be rescheduled.
Id. at 138-143.  Under the Social Security Claims Handbook,
"[i]f a claimant has any reason why he cannot go for the
scheduled appointment, he should tell SSA about it as soon as
possible.  If it is a good reason, SSA will reschedule the
appointment.  Some examples of what SSA considers good reasons
are: (1.) illness . . . ."  Richard Ruskell, Soc. Sec. Disab.
Claims Handbook § 5:5 n.1 (May 2020) (citing 20 C.F.R. §§
404.1518(a), (b) and §§ 416.918(a), (b)).  The record no doubt
reflects that Aziz was less than cordial, but the record also
reflects evidence of observed mental health issues around this
time, and that she missed her appointment because of pain.  R.
at 110, 138-143.

According to the reconsideration-level denial, the
psychological CE was "needed to fully evaluate [Aziz's]
condition."  Id. at 135.  On June 12, 2017, Aziz, again without
counsel, requested a hearing before a hearing officer, stating
that she missed the psychological CE examination because of an
injury:

> I REQUEST A HEARING BEFORE AN ADMINISTRATIVE LAW JUDGE.
> I DISAGREE WITH THE DETERMINATION MADE ON MY CLAIM FOR
> DISABILITY-WORKER OR CHILD BENEFITS BECAUSE MISSED
> SCHEDULE PSYCHOLOGIST EVAL 3/4/17 DUE TO SLIP & FALL
> INJURY 3/8/17, ACUTE BACK/EXTREMITY PAIN, MUSCLE SPASMS,
> LIMITED RANGE MOTION NECK, ANXIETY, OCD, DEPRESSION,
> AGORAPHOBIA.

Id. at 138 (capitalization in original) (emphasis added).

31

The hearing officer (and Aziz's counsel, for that matter) failed to address the issue of the psychological CE at the hearing or otherwise.  A review of the hearing officer's characterization of the record in his decision reveals the magnitude of this error:

> I gave little weight to the assessment of the State agency psychological consultants.  The consultants assessed insufficient evidence to support a severe psychological impairment.  However, as detailed above, the evidence reasonably supports enough psychological evidence to support more than minimal impairments (Ex. lA, 3A).

Id. at 19.  This is a characterization of the record that does not adequately describe the nature of the "assessment" -- if it can be seriously called that -- and glosses over an obvious hole in the record that was specifically addressed by Aziz in requesting the hearing, id. at 138, although ignored by her counsel.  Similar to Gschwend, 2020 WL 5203991, and focusing on the nature of the disability determination process -- an inquisitorial process, not an adversarial one, Sims, 530 U.S. at 110-11, -- while Aziz's counsel ought have raised the issue as well, it is ultimately the hearing officer's duty to "fully and fairly develop the record . . . even if the claimant is represented by counsel."  See Bianco, 2010 WL 2382855, at *4. Here, the SSA was of opinion, at least at the reconsideration stage, that a psychological CE was necessary and that there was a lack of substantial evidence in the record concerning Aziz's

mental health prior to DLI which necessitated SSA's purchase of
a psychological CE.  R. at 135.  While there are of course cases
holding that a CE is not always necessary, see, e.g., Austin v.
Barnhart, No. 03-156-B-W, 2004 WL 1896999, at *3 (D. Me. Aug.
25, 2004); Stefanowich v. Colvin, Civil Action No. 13-30020-KPN,
2014 WL 357293, at *3 (D. Mass. Jan. 30, 2014) (Neiman, M.J.)
(ordering third CE examination not required), the facts of this
case require it where the CE examination had been previously
ordered, the issue of the missed CE appointment was raised by
Aziz herself when she appealed the reconsideration, and that
issue was not even addressed by the hearing officer or her
counsel, see Gschwend, 2020 WL 5203991, at *3; Clayborne, 2007
WL 6123191, at *7.  The Commissioner's reliance upon Hill v.
Astrue, Civil Action No. 12-30018-KPN, 2012 WL 5830707, at *5
(D. Mass. Nov. 15, 2012) (Neiman, M.J.), Def.'s Mem. 14, for the
proposition that the hearing officer's RFC determination is
supported by substantial evidence when "all available medical
evidence" was considered misses the point: the hearing officer
cannot blind itself to what the SSA considered essential, R. at
135 -- and ordered -- something easily obtained but ignored by
the hearing officer in this case.  Indeed, this is the same
argument that the hearing officer made in Gschwend when counsel
requested the hearing officer complete the CE: there, the
hearing officer "explained that she was not inclined to do so

33

because Gschwend had missed the first with no attempt to reschedule <u>and because the record contained some medical evidence</u> but would consider the request."  <u>See</u> 2020 WL 5203991, at *2 (emphasis added).

While it might be argued that a Sixth Sentence[7] remand is appropriate where "'the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is

---

[7] Pursuant to the Sixth Sentence of 42 U.S.C. § 405(g), upon appeal to this Court by a claimant allegedly aggrieved by a decision of the Commissioner, this Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based."  42 U.S.C. § 405(g).  A "sixth sentence" remand is "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding."  <u>Sullivan</u> v. <u>Finkelstein</u>, 496 U.S. 617, 626 (1990). Indeed, under those circumstances, "[t]he district court does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the correctness of the administrative determination.  Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding."  <u>Melkonyan</u> v. <u>Sullivan</u>, 501 U.S. 89, 98 (1991)."

essential to a fair hearing,'" see Torres-Pagán, 899 F.3d at 60 (quoting Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991)), this case goes beyond that.  Rather, the Court reverses and remands under Sentence Four, as in Gschwend and Clayborne, because the hearing officer's decision was not supported by substantial evidence where the hearing officer failed to address the single issue raised on appeal by Aziz: the need to complete the SSA-ordered CE.  Gschwend, 2020 WL 5203991, at *3; Clayborne, 2007 WL 6123191, at *7; see Gaulden v. Astrue, No. CIV S-09-899 KJM, 2010 WL 3835746, at *2-3 (E.D. Cal. Sept. 30, 2010) (remanding under Sentence 4 for failure to order CE examination previously scheduled because claimant incarcerated); cf. Antoniou v. Astrue, No. 10-CV-1234 (KAM), 2011 WL 4529657, at *17-18 (E.D.N.Y. Sept. 27, 2011) (denying cross-motions and remanding for further proceedings).  In this Court's view, everything flows from a complete record, and a reversal and remand is necessary.

### C.    The Hearing Officer Improperly Based his Opinion on Aziz's Lack of Mental Health Treatment.

Aziz claims that it was error for the hearing officer to consider her lack of mental health treatment without considering the reasons behind it.  Pl.'s Mem. 17-19.  The Court agrees. The complete reference in the Decision is as follows:

> The claimant engaged in medication management for the
> alleged mental health issues, however, the record shows
> no documented evidence of mental health therapy to cope
> with such symptoms (Ex. 7F/3/10/18). Moreover, the
> record shows no documented inpatient hospitalization,
> partial hospitalizations or other type of intensive
> crisis care during the period at issue. Crisis
> intervention after the date last insured merely supports
> worsening of symptoms after the date last insured.

R. at 15. There is evidence that Aziz was repeatedly advised to

get mental health services by Dr. Thompson and nursing staff.

Id. at 305, 392, 397, 402, 596. The record also reflects that

Aziz did not do so. Id. at 596-597. Why? The record is

largely silent as to this issue, although there is an indication

that Aziz has "difficulty accepting help." Id. at 596. The

hearing officer apparently did not consider the reasons. While

the hearing officer inquired at the hearing about post-DLI

hospitalizations, Aziz testified that she wanted to be

hospitalized but there was apparently never any room at the

hospital after the relevant period, in 2018 or later. Id. at

54-55. The Commissioner argues that, at the hearing, Aziz's

counsel did not adduce any evidence as to the financial issues

and therefore he is stuck with that record. Def.'s Mem. 20

(citing Faria v. Comm'r of Soc. Sec., No. 97-2421, 1998 WL

1085810, at *1 (1st Cir. Oct. 2, 1998). The Commissioner also

argues that the cost of crisis intervention is essentially free.

Id.

The Commissioner's reliance on Faria is misplaced.  Faria is an unpublished decision of limited utility here because it merely states the obvious: "[w]hen a claimant is represented, the ALJ, should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored."  1998 WL 1085810, at *1 (quotations omitted) (emphasis added).  The First Circuit went on to state what is also true: that the Court "will not fault the [hearing officer] for failing to . . . ask further questions, particularly where claimant has not shown how he was prejudiced by the [hearing officer's] alleged shortcomings."  Id.  While Aziz's counsel has a responsibility to develop the record, and perhaps there are reasons that counsel chose not to do so, the Commissioner cites no case for the proposition that the hearing officer may ignore the analysis required in Social Security Ruling ("SSR") 16-3p if Aziz's counsel failed to raise an issue at the hearing to Aziz's prejudice.  This is especially true where, as here, the hearing officer did not raise the reason for lack of pre-DLI mental health treatment at all (indeed this issue likely would have been addressed had the issue of the psychological CE been raised, or if the CE had been re-ordered).  To be sure, SSR 16-3p states in pertinent part:

> In contrast, if the frequency or extent of the
> treatment sought by an individual is not comparable

with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. <u>We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.</u> When we consider the individual's treatment history, we may consider (but are not limited to) one or more of the following:

-An individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms.

-An individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau.

-An individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms.

-An individual may not be able to afford treatment and may not have access to free or low-cost medical services.

-A medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual.

-An individual's symptoms may not be severe enough to prompt him or her to seek treatment, or the symptoms may be relieved with over the counter medications.

-An individual's religious beliefs may prohibit prescribed treatment.

-Due to various limitations (such as language or mental limitations), an individual may not understand the appropriate treatment for or the need for consistent treatment of his or her impairment.

-Due to a mental impairment (for example, individuals with mental impairments that affect judgment, reality testing, or orientation), an individual may not be aware that he or she has a disorder that requires treatment.

. . . .

The above examples illustrate possible reasons an individual may not have pursued treatment. However, we will consider and address reasons for not pursuing treatment that are pertinent to an individual's case.

SSR 16-3p, 2017 WL 5180304, at *9-10 (Oct. 25, 2017) (emphasis added).

While the Commissioner is correct that failure to seek treatment and a lack of inpatient hospitalizations may be considered, see Perez Torres v. Sec'y of Health & Hum. Servs., 890 F.2d 1251, 1255 (1st Cir. 1989), failure to consider reasons for failure to seek treatment is reversible error, see, e.g., Cordeiro v. Saul, 391 F. Supp. 3d 170, 178-79 (D. Mass. 2019) (Saris, C.J.) (reversing and remanding where hearing officer considered lack of treatment inpatient admissions without considering reasons); cf. Maldonado v. Berryhill, CIVIL ACTION NO. 18-11255-ADB, 2019 WL 4921538, at *28 (D. Mass. Sept. 4, 2019) (Bowler, M.J.) (no error where the hearing officer asked the claimant his reasons for lack of treatment at the hearing although not addressed in the decision); Holland v. U.S. Soc.

Sec. Comm'n, Acting Comm'r, Civil No. 18-cv-003-LM, 2019 WL 494626, at *8 (D.N.H. Feb. 7, 2019) (no error where claimant could point to no reason for failure to obtain further treatment).  Here, there is no evidence in the record that the hearing officer considered the reasons pre-DLI, and he certainly did not address those reasons in his decision.  To the extent that the hearing officer wished to rely on lack of mental health treatment with respect to the Listing determinations, or later with respect to the severity of Aziz's mental health symptoms, it was incumbent upon him to consider the underlying reasons and to address those reasons.  See Cordeiro, 391 F. Supp. 3d at 178–79.  Moreover, the record demonstrates that the pre-DLI evidence is that Aziz wanted therapy for mental health conditions.  R. at 397, 400.  Finally, the Commissioner's argument that mental health crisis treatment is available without cost does not sufficiently address the delicate issues as to whether and how claimants, particularly with historic and more recent trauma issues, see, e.g., R. at 362-363, 608, 613-614, 617, 659, 675, seek such treatment.

### D.   Other Issues Raised

To the extent that a rehearing and decision is contemplated here, the Court need not and does not address the issues not otherwise addressed in this opinion.

**III. CONCLUSIONS**

For the aforementioned reasons, Aziz's Motion for Order Reversing Decision of Commissioner (ECF No. 18) is <u>ALLOWED</u> under the Fourth Sentence of Section 405(g), and the Commissioner's Motion to Affirm the Decision of the Commissioner (ECF No. 21) is <u>DENIED</u>.  Accordingly, the Commissioner's decision is <u>REVERSED</u> and <u>REMANDED</u> for <u>REHEARING</u> and further proceedings consistent with this opinion.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE